R. Spencer Montei, Esq.
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, Illinois 60654-4762
Telephone:  (312) 832-4500
Facsimile:  (312) 832-4700
E-mail: rmontei@foley.com

Robert S. Weisbein, Esq (*pro hac vice* forthcoming)
Sam Koch, Esq. (*pro hac vice* forthcoming)
Arian Jabbary, Esq. (*pro hac vice forthcoming*)
New York State Bar No. 1844588.
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016-1314
Telephone: (212) 682-7474
Facsimile:  (212) 687-2329
E-mail:     <rweisbein@foley.com>

*Attorneys for Crowned Skin Group, LLC*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CROWNED SKIN GROUP, LLC,<br><br>Plaintiff,<br><br>*v.*<br><br>RESTORED MOISTURE LLC,<br><br>Defendant. | Case No. 25-cv-12784<br><br>**COMPLAINT FOR (I) DECLARATORY JUDGMENT OF NON-INFRINGEMENT, (II) FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(A), (III) ILLINOIS COMMON-LAW TRADEMARK INFRINGEMENT/UNFAIR COMPETITION, (IV) VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, (V) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, AND (VI) TORTIOUS INTERFERENCE WITH CONTRACT**<br><br>JURY TRIAL DEMANDED |

1

Plaintiff, Crowned Skin Group, LLC, by its attorneys, Foley & Lardner LLP, for its Complaint for (i) declaratory judgment of non-infringement, (ii) false designation of origin under 15 U.S.C. § 1125(a), (iii) Illinois common-law trademark infringement/unfair competition, (iv) violations of the Illinois Uniform Deceptive Trade Practices Act, (v) tortious interference with prospective economic advantage, and (vi) tortious interference with contract, against Defendant, Restored Moisture LLC, alleges as follows:

## Nature of the Action

1. This is an action by Plaintiff, Crowned Skin Group, LLC ("**Crowned Skin**"), for a declaratory judgment that Plaintiff's use of the term "King" in connection with cologne-infused body butters and body oils sold under its CROWNED SKIN brand does not infringe Defendant, Restored Moisture LLC's trademark, KING SKIN, because Crowned Skin's use of "King" other than as a trademark constitutes descriptive fair use.

2. Plaintiff further seeks redress for Defendant's repeated misuse of Amazon's Brand Registry trademark enforcement policy by its filing of numerous, baseless infringement complaints that caused the takedown of multiple Plaintiff product listings on its Amazon store, including listings that do not use the word "King." Defendant's conduct has intentionally interfered with Plaintiff's contractual relationships with Amazon as well as its sales to prospective customers, and has caused substantial, ongoing commercial harm.

3. The relevant marketplace for cosmetic and beauty products is saturated with KING and KING-formative marks in International Class 3, rendering Defendant's KING SKIN registration conceptually and commercially weak and therefore entitled to only a narrow scope of protection against uses of "King" on identical goods. By contrast, Plaintiff's products are prominently branded with its mark CROWNED SKIN, with "King." Plaintiff's use of

designations such as, Reign, Monarch, Prince, Empire as scent/variant names – i.e., otherwise than as a trademark – on products that are presented in distinct packaging and trade dress, constitutes a descriptive fair use.

4.  Although Plaintiff briefly branded its products with the mark KING SKIN (March–May 2024), the use was without knowledge of Defendant or its purported trademark rights; as discontinued months before Defendant's February 25, 2025 registration issued; and was never used in commerce on Amazon. After receiving a cease-and-desist letter from Defendant dated September 17, 2025, Plaintiff in good faith promptly removed residual references on its website (including historical marketing and video materials). There is no ongoing use by Plaintiff of KING SKIN as a trademark or brand.

5.  Despite these facts, Defendant initiated a campaign of takedowns targeting Plaintiff's most successful products on Amazon, some of which bore the scent designation "King" while others did not, at times relying on obsolete backend thumbnail imagery appearing only on Amazon's Brand Registry, which is accessible to registered trademark owners but not consumers. Sales of Plaintiff's Crowned Skin products through its Amazon store are approximately $500,000 per month; each day of delisting resulting from Defendant's improper takedowns causes significant lost sales, suppresses SEO and Amazon search rankings, erodes reviews, and causes marketplace harm that is irreparable absent injunctive relief.

6.  Plaintiff asserts claims for (i) declaratory judgment of non-infringement and descriptive fair use, (ii) false designation of origin under 15 U.S.C. § 1125(a) based on Defendant's adoption and use of "Formulated for men. Approved by women.", or confusingly similar slogans to Plaintiff's unregistered trademark "Made for Men. Tested by Women.", (iii) Illinois common-law trademark infringement/unfair competition, (iv) violations of the Illinois Uniform Deceptive

Trade Practices Act, (v) tortious interference with prospective economic advantage, and (vi) tortious interference with contract. Plaintiff seeks injunctive relief – including a mandatory retraction of Defendant's Amazon takedown complaints, corrective advertising, and an order barring Defendant's filing complaints with Amazon's Brand Registry complaints arising from Plaintiff's non-trademark use of "King" and/or cached artifact non-public uses of KING SKIN, and damages, costs, and attorneys' fees.

**Parties, Jurisdiction, and Venue**

7.   Plaintiff, Crowned Skin Group, LLC, is an Illinois limited liability company with an address of 2045 West Grand Avenue, Suite B, Chicago, IL 60612-1577.

8.   Upon information and belief, Defendant, Restored Moisture LLC, is a Louisiana limited liability company with its principal place of business at 9311 Lytham Drive, Shreveport, Louisiana 71129 and/or 333 Texas Street, Shreveport, Louisiana 71101.

9.   This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331 because it is an action arising under the laws of the United States, specifically 15 U.S.C. § 1114 and 28 U.S.C. §§ 2201–2202, and pursuant to principles of supplemental jurisdiction.

10. This Court also has subject matter jurisdiction of this action pursuant to  28 U.S.C. § 1332 because there is complete diversity of citizenship between the Parties and the amount in controversy exceeds $75,000. Plaintiff's sole member resides in Illinois, and upon information and belief, none of Defendant's members reside in Illinois.

11. Defendant is subject to personal jurisdiction in Illinois under Civil Practice Law § 2-209(a)(1) because Defendant has transacted business within Illinois in connection with its efforts to prevent Plaintiff from using the non-trademark descriptive term "King."

12. Defendant is additionally subject to personal jurisdiction in Illinois under Civil Practice Law § 2-209(a)(2) because it has committed a tortious act within Illinois, or alternatively because it has committed a tortious act outside of Illinois causing injury to Plaintiff within Illinois, in connection with Defendant's efforts to prevent Plaintiff from using the non-trademark descriptive term "King."

13. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this judicial district.

14. Alternatively, venue is proper in this judicial district under 28 U.S.C. § 1391(c) because there is no judicial district in which an action may otherwise be brought and Defendant is subject to personal jurisdiction in this judicial district.

## Facts

### A.  Plaintiff's Branding Lineage, Slogan Mark, and Commercial Success

15. Darrell Spencer ("**Spencer**") is a serial innovator and brand-builder in men's grooming and personal care. In December 2020, Spencer founded the brand "Kings Crowning," an innovative line of satin hats designed to provide fashionable haircare solutions for Black men. Beginning with *The Crown* adjustable satin-lined cap and expanding to satin-lined turbans, brimless hats, baseball caps, and hoodies, Kings Crowning scaled rapidly from nearly $1 million in its first year to multi-million-dollars in revenues by 2023, developing a deeply loyal customer base along the way.

16. In 2022, Kings Crowning introduced body butter products under the moniker "Kings Crowning Body Butters," led by the aptly named "King Body Butter" as its hero SKU. Kings Crowning Body Butters were designed as moisturizing body creams that doubled as colognes.

5

17. Seemingly overnight, the King Body Butter became a brand-defining product for Kings Crowning, cementing the company's place in the market as a leader in Black men's grooming and personal care. By the end of 2023, recognizing the immense upward trajectory in demand for fragranced body butters by virtue of the King Body Butter's success, Spencer made the strategic decision to found a new brand focused solely on these products. From Kings Crowning, "Crowned Skin" was born.

18. Plaintiff Crowned Skin was formed in early 2024, informed and emboldened by the success of Kings Crowning's *King Body Butter* which hit the market on March 1, 2024. Since its founding, Plaintiff's flagship innovation has been its *Body Butter Cologne*, a rich, nutrient-dense moisturizer that also serves as a long-lasting fragrance. By the second half of the year, Crowned Skin expanded its product offering to include the *Body Oil Cologne* – a lightweight hydration solution with the same, rich fragrances as the *Body Butter Cologne* offering.

19. When Plaintiff first commenced doing business it briefly adopted the working name KING SKIN as a bridge from its prior venture, Kings Crowning, and based on the proven demand for its *King Body Butter* hero SKU. At that time, Plaintiff was unaware of Restored Moisture, its line of men's personal care products or its purported rights in the mark KING SKIN. That transitional reference appeared on limited packaging (*See* Exhibit A) for approximately two months in spring 2024 and functioned as a continuity cue to an existing customer base already familiar with the "King" variant from Kings Crowning's body-care line. Plaintiff never sold KING SKIN branded products on Amazon. Defendant's KING SKIN trademark did not register with the United State Patent and Trademark Office ("**USPTO**") until February 25, 2025, well after Plaintiff had discontinued any active brand use of that designation.

20. In the spring of 2024, Plaintiff finalized its brand architecture and adopted CROWNED SKIN as its exclusive house mark. The change was deliberate: it invoked the notoriety and goodwill associated with Kings Crowning while freeing "King" to serve its intended role as a scent/variant descriptor alongside coordinated *royal designations* such as Queen, Prince, Reign, Monarch, and Empire. From that point forward, consumer-facing materials – packaging, Amazon "Brand" fields, product detail pages, and advertising – prominently presented CROWNED SKIN as the source identifier, with the royal terms occupying a secondary, non-trademark, descriptive position modifying the product nouns (e.g., Body Butter, Body Oil).

21. From inception, Plaintiff Crowned Skin has articulated a clear brand ethos built around a cohesive "royal" lexicon that communicates dignified confidence, excellence, and luxury. Plaintiff designates fragrance families with variant names such as *King*, *Queen*, *Prince*, *Reign*, *Monarch*, and *Empire*, each tied to a distinct scent profile and consumer experience. In Plaintiff's packaging and marketplace listings, the house mark CROWNED SKIN appears prominently above all other secondary brand elements as a source identifier, whereas the royal fragrance names (*King, Queen, Prince,* etc.) function as variant descriptors that modify the otherwise generic product terms (e.g., Body Butter, Body Oil).

22. Within that framework, "King" serves the same role as the other royal fragrance descriptor variants: it denotes a particular scent profile associated with warm, sensual notes. The shared royal theme underscores that "King" is one member of an integrated naming system, not a brand or sub-brand, and reinforces that consumers encounter Crowned Skin as the source while selecting among royal-named variants to suit preference and occasion.

23. This continuity of nomenclature, audience, and presentation has cultivated substantial goodwill in the CROWNED SKIN house mark while reinforcing that "King" denotes

a specific scent profile rather than brand origin. Plaintiff's high-velocity SKUs (including King Body Butter and the King & Reign bundles) further reflect consumer recognition of the variant system and its role in product selection within the CROWNED SKIN line.

24. To protect its brand identity, Plaintiff applied to register the CROWNED SKIN house mark with the United States Patent and Trademark Office in International Class 3 for "Skin care preparations, namely, skin peels; Skin cleansing cream; Skin cleansing lotion; Skin cream; Skin creams; Skin lotion; Skin lotions; Skin moisturizer; Skin softeners; Cosmetic skin fresheners; Cosmetic creams for skin care; Cosmetics sold as an integral component of non-medicated skincare preparations; Moisturizing preparations for the skin; Moisturizing solutions for the skin; Non-medicated skin creams," based on use in commerce under Section 1(a). See U.S. Trademark Application Serial No. 98/676,100, filed July 31, 2024. The CROWNED SKIN application remains pending and reflects Plaintiff's continuous, nationwide use of CROWNED SKIN as its house mark.

25. As a core element to Plaintiff's brand identity, Plaintiff created the slogan mark "Made for Men. Tested by Women." (the "**Slogan Mark**"). The Slogan Mark encapsulates Plaintiff's value proposition: effective men's grooming products developed for male skin and scent preferences, validated through female feedback to ensure appeal and performance in real-world use. The two-clause, call-and-response structure is distinctive and communicates a consistent brand message about quality, confidence, and cultural relevance. The messaging of the Slogan Mark is reiterated frequently by Plaintiff's primary social media marketing strategy – i.e., videos of women expressing the irresistible nature of men wearing Plaintiff's fragranced products.

26. Plaintiff first adopted and began using the Slogan Mark in commerce in or about April 2025, and has used it continuously on advertisements appearing on social media nation-wide

since that time. The Slogan Mark appears prominently on Plaintiff's consumer-facing Instagram profile description, and in connection with the advertising and promotion of Plaintiff's cologne-infused body butters and body oil colognes under the CROWNED SKIN house mark. Plaintiff attaches a screenshot of this use as Exhibit B.

27. Plaintiff uses the Slogan Mark on one of the grooming marketplaces' most important channel of marketing and trade – Instagram – in order to identify source and to signal brand ethos at the point of consumer decision. Consumers encountering the Slogan Mark associate it with Plaintiff exclusively and its product line; the Slogan therefore functions as a common-law mark designating origin for Plaintiff's goods.

28. The Slogan Mark aligns with Plaintiff's "royal lexicon" of variant names (Queen, King, Reign, Monarch, Prince, Empire) by reinforcing a brand narrative of elevated grooming for men, while leaving those royal terms to function strictly as scent/variant descriptors within the CROWNED SKIN product system. As a result, consumers encounter (i) CROWNED SKIN as the house mark, (ii) the Slogan Mark as a consistent source-signaling tagline, and (iii) the royal terms as fragrance options – each playing a distinct role in Plaintiff's brand architecture.

29. Since its 2024 launch, CROWNED SKIN has experienced rapid and sustained commercial success. In its first year, the brand generated eight-figure revenue, driven by consistent sales of its cologne-infused *Body Butter Cologne* and *Body Oil Cologne* products and repeat purchases across scent variants. On Amazon, Plaintiff ascended to the Top-50 brands in the men's grooming category, reflecting high sales numbers, conversion, and review accruals.

30. Plaintiff's growth has been propelled by exceptional channel performance and social proof. The brand achieved the #1 position for men's skincare on TikTok Shop, and its marketing ecosystem – anchored by TikTok virality, Instagram marketing, influencer-led user

generated content, and search capture on Google and Amazon – drives this cyclical success. Plaintiff maintains a substantial audience across platforms (approximately 80,000 Instagram followers; 22,000 Facebook followers; 16,200 TikTok followers with 48,000 likes), evidencing nationwide recognition and consumer engagement.

31. Media and industry acknowledgment mirror this market traction. In 2025, Spencer and Crowned Skin were featured by BET, the Tamron Hall show, Black Enterprise, and Rolling Out, and Spencer presented at the Alibaba Co-Create Conference and the Maconomics Wealth Summit. Event activations at technology and culture touchpoints (including AfroTech and BET Experience) reinforced the brand's visibility and credibility with consumers and the trade.

32. Product performance is concentrated around "hero" SKUs with significant social proof. The *King Body Butter Cologne* and the *King & Reign Body Butter Cologne Duo* routinely rank among top sellers and together account for more than 40% of Plaintiff's annual revenue. Thousands of reviews highlight hallmark positive attributes of Plaintiff's products, confirming consistent consumer recognition of CROWNED SKIN as the source and the royal terms (e.g., Queen, Reign, King) as fragrance selections, each acting individually and together to communicate the products' proven quality.

33. On the Amazon marketplace in particular, Plaintiff averages approximately $500,000 per month in sales, reflecting established customer relationships, algorithmic placement based on performance, and sustained repeat purchase behavior. Day-to-day sales success, Best Sellers Rank, and review cadence are critical commercial indicators for CROWNED SKIN's listings and are the product of substantial investment in product development, packaging, advertising, and community engagement.

**B. Defendant's Business and Inherently Weak Trademark Rights**

34. Upon information and belief, Defendant Restored Moisture LLC, d/b/a "King Skin" publicly launched its men's grooming brand KING SKIN on or about October 2023, offering fragranced body butter products, with product titles such as *Charcoal Black*, *Check Mate*, *Ice*, *Mic Drop*, and more.

35. According to Louisiana Secretary of State records, Defendant formed its Restored Moisture LLC entity on December 13, 2022.

36. According to USPTO records, on October 26, 2023, Defendant filed a trademark application to register KING SKIN in International Class 3 for "skin care products, namely, non-medicated skin serum," alleging first use and first use in commerce as of October 9, 2023. The application matured to registration on February 25, 2025 (Reg. No. 7,708,312; Ser. No. 98/242,471). The registration is recent and, being less than five years old, is not incontestable under the Lanham Act.

37. Upon information and belief, given the diluted nature of Defendant's mark by reason of the use and registration of third party "King" composite marks as set forth in Paragraphs 39-41, Defendant's trademark rights in its registered mark KING SKIN are exceptionally narrow, and it has no exclusivity of rights in the term KING alone.

38. KING SKIN is, at best, an inherently weak composite mark. Laudatory terms like "King" that convey superiority or premium status are afforded minimal conceptual strength in U.S. trademark jurisprudence; they tell consumers what the product aspires to be, not who made it. A composite built from a laudatory element ("King") and a descriptive reference ("Skin") yield a mark with low inherent distinctiveness and, correspondingly, a narrow scope of protection.

39. A review of the records of the United States Patent and Trademark Office in Class 3 reveals that KING SKIN resides in a highly crowded field of "King" marks. Royal terminology pervades cosmetics and grooming as fragrance/variant names, collection themes, and copy. Consumers shopping soaps, lotions, butters, and oils have been conditioned by years of marketplace exposure to treat "king" language as puffery or variant nomenclature, not as an exclusive identification of source. In such conditions, even a registered composite incorporating KING is entitled only to narrow enforcement commensurate with its modest conceptual strength.

40. Any claim to robust rights in KING SKIN by Defendant would require proof of secondary meaning – i.e., that buyers predominantly associate that exact phrase with a single producer. That showing typically demands substantial, exclusive and continuous use, significant advertising outlays, compelling marketplace recognition, substantial marketing spend, or survey evidence. On information and belief, Defendant lacks the kind of longstanding, exclusive, and marketplace-dominant use that would transform KING SKIN from a weak composite into a strong source identifier. Upon information and belief, Defendant's sales figures are considerably low since its founding.

41. Separately, KING by itself is especially weak in the grooming context. Widespread market adoption of KING – in product names, lines, and descriptions – further dilutes any distinctiveness in that word. Where a term is commonly and independently adopted by many sellers for similar goods, consumers do not treat the term as pointing uniquely to one source. Instead, they understand it as category language or a variant cue, and the law cabins enforcement accordingly. USPTO records as of the date hereof indicate that there are approximately 217 existing applications or registrations for marks containing KING, or terms phonetically the same, in Class 3.

### C. Defendant's Wrongful Enforcement and Commercial Consequences

42. On September 17, 2025, Defendant, through counsel, initiated an enforcement campaign against Plaintiff by sending a cease-and-desist letter alleging that Plaintiff's use of "King" as described above infringes Defendant's claimed rights in KING SKIN, and further objecting to a brief, discontinued transitional reference to KING SKIN that had appeared on limited packaging. Plaintiff responded on September 22, 2025, through its corporate counsel, and then again on October 11, 2025, placing Defendant on clear notice that it was not infringing upon Defendant's trademark rights in KING SKIN and that any legacy references in residual marketing assets to KING SKIN were already removed in good faith, and that if other such residual uses remained on social media or online sales platforms that Defendant should bring them to Plaintiff's attention and they would be removed.

43. Defendant nevertheless bypassed dialogue with Plaintiff and immediately sought to initiate product listing takedown proceedings against Plaintiff through the Amazon's Brand Registry, resulting in the takedowns of the following CROWNED SKIN listings listed below (titles written as they appear on Amazon to consumers):

> Crowned Skin King and Reign Cologned Body Butter Bundle | Sandalwood, Leather, Fresh, and Nautical Scents | INFUSED with Organic Shea & Mango Butters | Moisturizing Formula with All-Day Fragrance.

> Crowned Skin King and Reign Cologned Body Oil Bundle | Sandalwood, Leather, Fresh, and Nautical Scents | INFUSED with Organic Shea & Mango Butters | Moisturizing Formula with All-Day Fragrance.

> Crowned Skin King, Reign, and Monarch Cologned Body Oil Bundle | Alluring, Nautical, & Spicy Scents | INFUSED with Organic Shea & Mango Butters | Moisturizing Formula with All-Day Fragrance.

> King and Reign Cologned Body Butter Bundle | Sandalwood, Leather, Fresh, and Nautical Scents | INFUSED with Organic Shea & Mango Butters | Moisturizing Formula with All-Day Fragrance.

Crowned Skin King Cologned Body Butter | Warm and Sensual Scent | Blended with Sandalwood & Leather | INFUSED with Organic Shea & Mango Butters | Moisturizing Formula with All-Day Fragrance | 4.4oz.

44. Each removed listing identified CROWNED SKIN as the brand in Amazon's "Brand" field and used "King" only as variant names appended to the product nouns (Body Butter/Body Oil), consistent with Plaintiff's continuous use backdating to its Kings Crowning product *King Body Butter*.

45. In the last ten (10) days, Defendant has expanded its wrongful enforcement campaign to listings that do not even reference the term "King" at all, procuring removals for the following products (titles written as they appear on Amazon to consumers):

Reign Cologned Body Butter and Body Oil Bundle | Fresh & Nautical Pink Pepper & Bergamot Scent | Infused with Organic Shea & Mango Butters | Moisturizing Formula with All-Day Fragrance

Crowned Skin Reign Cologned Body Oil | Fresh & Nautical Scent | Blended with Pink Pepper & Bergamot | Infused with Organic Jojoba & Grapeseed Oil | Moisturizing Formula with All-Day Fragrance | 4oz

Monarch Cologned Body Butter and Body Oil Bundle | Spicy and Bold White Musk & Cedarwood Scent | Infused with Organic Shea & Mango Butters | Moisturizing Formula with All-Day Fragrance

46. When pressed to justify the removals of listings that did not use "King," Defendant furnished partial screenshots from Amazon's Brand Registry dashboard (a backend business portal not visible to consumers or representative of live product pages) depicting cached, legacy "thumbnail" product images associated with Plaintiff's historical catalog entries. Those backend thumbnails reproduced early-period artwork that included the phrase KING SKIN, but they predated Plaintiff's Amazon launch under CROWNED SKIN and were never displayed to consumers in the product image carousel. In other words, the screenshots captured non-consumer-facing reference files retained in Amazon's catalog history, not the content a shopper sees when purchasing Plaintiff's products.

14

47. Defendant nevertheless cited these internal cache artifacts as purported "evidence" to flag and remove current CROWNED SKIN listings for non-KING products whose live pages conspicuously identified CROWNED SKIN in the Amazon "Brand" field and contained no KING SKIN wording visible to consumers. Defendant had ready access to those live pages and, upon information and belief, knew or should have known that its backend thumbnails were obsolete and irrelevant to consumer presentation. Reliance on non-public, outdated catalog files to trigger Brand Registry takedowns of currently compliant listings is not evidence of use in the marketplace and is a misuse of platform tooling to suppress competitor listings.

48. Despite Plaintiff's multiple efforts (including without limitation in its September 22, 2025 and October 11, 2025 letters, and the multiple telephone conferences between the parties' counsels) to explain Plaintiff's nominal short-lived use of KING SKIN before its rebrand, and its current use of the term "King" as one of many descriptors for product scents, Defendant persisted in submitting and maintaining Brand Registry takedowns based on a scope of trademark rights in the term KING for which it does not possess, and premised on non-public, outdated catalog artifacts, thereby acting knowingly and willfully, in mischaracterizing compliant Plaintiff's listings as infringing. Just two days before the filing of this complaint, Defendant submitted additional takedown complaints against more of Plaintiff's products (referenced below), which amounts to a clear effort by Defendant to debilitate Plaintiff's business:

> King Cologned Body Butter and Body Oil Bundle | Warm and Alluring Sandalwood & Leather Scent | Infused with Organic Shea & Mango Butters | Moisturizing Formula with All-Day Fragrance

> King Cologned Body Butter and Body Oil Bundle | Warm and Alluring Sandalwood & Leather Scent | Infused with Organic Shea & Mango Butters | Moisturizing Formula with All-Day Fragrance

> Crowned Skin King Cologned Body Oil | Warm and Alluring Scent | Blended with Sandalwood & Leather | Infused with Jojoba and Grapeseed Oil | Moisturizing Formula with All-Day Fragrance | 4oz

Crowned Skin King Cologned Body Oil | Warm and Alluring Scent | Blended with Sandalwood & Leather | Infused with Jojoba and Grapeseed Oil | Moisturizing Formula with All-Day Fragrance | 4oz

49. As set forth in Paragraph 19, in the earliest phase of the brand, Plaintiff briefly adopted the working name KING SKIN for approximately two months in spring of 2024, and then completed a swift rebrand to CROWNED SKIN, long before Defendant's September 17, 2025 letter. Plaintiff never offered goods on Amazon under KING SKIN. Following receipt of Defendant's initial letter, Plaintiff undertook a comprehensive good-faith audit and cleanup: it reviewed all Plaintiff-controlled channels and used its best commercial efforts to replace any residual legacy references. Plaintiff's live Amazon listings thereafter, and at all times relevant to Defendant's complaints, displayed CROWNED SKIN as the brand and any use of the mark KING SKIN did not appear anywhere on the platform visible to consumers.

50. On or around this time, Plaintiff promptly appealed the product removals through Amazon's internal process; the appeals were denied without any adjudication on the merits of trademark claims set forth by Defendant. Amazon's Brand Registry decisions are administrative and non-judicial, premised solely on the representations of the complaining party and not on a likelihood-of-confusion analysis under the Lanham Act. With the live Product Detail Pages already showing CROWNED SKIN as the brand and with Plaintiff's rebrand and cleanup disclosed to Defendant on September 22, 2025, Defendant had an ongoing obligation to correct the record and retract its Amazon takedown complaints. Instead, Defendant accelerated its filing of takedowns notwithstanding its knowledge that the listings at issue, many of them with non-KING titles, contained non-consumer-facing use of the challenged trademark.

51. Plaintiff's Amazon listings do not infringe Defendant's asserted rights because, as actually encountered by consumers, the source identifier is CROWNED SKIN, consistently shown in Amazon's "Brand" field, on packaging, and across all consumer-facing content, while the royal

16

words (KING, QUEEN, etc.) appearing only as fragrance/variant descriptors appended to the generic product nouns (*Body Butter/Body Oil*). *See* a visual comparison of the parties' packaging, below:



| Plaintiff's Packaging | Defendant's Packaging |
| --- | --- |

52.  In a marketplace saturated with KING and KING-formative terminology for Class 3 goods, any enforceable scope in Defendant's composite mark is narrow; it does not extend to ordinary, descriptive non-trademark variant naming under a different, prominent house mark, nor does it convert commonplace copy (fragrance notes, ingredient callouts, performance claims) into infringing copy.

53. The commercial consequences of Defendant's takedowns were immediate, material, and compounding. Plaintiff has sales of approximately $500,000 per month on Amazon; each day a product listing remains delisted deprives Plaintiff of roughly $14,000 in revenue. Such suppression also degrades "Best Sellers Rank," halts product review momentum, and interferes with search-term history and advertising relevancy signals, effects that persist even after reinstatement and require substantial remedial spend to recover baseline placement. This impact falls heaviest on Plaintiff's hero SKUs – namely, the *King Body Butter Cologne* and *King & Reign Body Butter Cologne Duo*, which together account for over 40% of revenue. In addition, because Defendant's takedown campaign, Plaintiff was forced to opt out of Amazon's "Holiday Beauty Haul" (October 20 - November 2, 2025) for lack of live inventory to feature, directly forfeiting the

promotion's revenue and visibility benefits. Participation would conservatively have yielded ~$20,000/day during the 14-day event, losses proximately caused by Defendant's takedowns. These platform-level injuries compound over time and are not fully compensable by money damages, alone.

54. Defendant's takedown filings follow a targeted, escalating pattern: they focus first on Plaintiff's most profitable Amazon SKUs, then broadened to non-KING listings, and have been since maintained even after Plaintiff communicated in good faith with Defendant as referenced herein. Knowing the commercial and financial impact on Plaintiff's business as a consequence to Defendant's wrongful enforcement campaign, Defendant has nonetheless refused to retract any of its Brand Registry complaints.

55. Defendant's baseless Amazon Brand Registry complaints do more than remove individual SKUs; they damage Plaintiff's relationship (contractual and otherwise) with Amazon itself and disrupt the relationship between Amazon and end-customers. Amazon records intellectual-property complaints against affected listings and the seller account, treats them as risk signals within its trust-and-safety systems, and (when complaints persist) subjects the account to heightened scrutiny, delayed or throttled relisting, restrictions on catalog edits and advertising, and impaired program access tied to the suppressed SKUs. These "account health" and compliance flags erode Amazon's institutional confidence in Plaintiff as seller-of-record, prolong reinstatement cycles, and strain the parties' ongoing commercial dealings. At the same time, end-customers experience product unavailability, canceled orders, and loss of continuity in reviews, impairing the consumer relationship that Amazon intermediates for Plaintiff. Defendant's takedown campaign is intentionally directed at Plaintiff's relationships with Amazon and its

customers (and between Amazon and end-customers) and is designed to cause, and has succeeded in causing, harm on Plaintiff.

56. In sum, Defendant's wrongful enforcement campaign is ongoing and untethered to any colorable claim of trademark infringement. It rests on non-consumer-facing, outdated catalog artifacts and unfounded trademark law; it targets listings that clearly identify CROWNED SKIN as the brand; it sweeps in non-KING products; and it persists despite notice and Plaintiff's good-faith remediation. Judicial intervention is required to halt the continuing interference, correct the marketplace record, and prevent further harm.

### D. Defendant's Pattern of Copying and Slogan Infringement

57. Defendant's conduct reflects a sustained pattern of imitating Plaintiff's marketplace presentation while seeking, through platform complaints, to suppress Plaintiff's listings. On Amazon, Defendant's body butter listings adopt the same title architecture and messaging cadence that Plaintiff pioneered for CROWNED SKIN: a variant name lead-in, followed by a sequence of fragrance-note callouts ("notes of …"), ingredient highlights ("Infused with …," "Packed with …"), and performance claims ("Long-Lasting …," "Deep Hydration …"), all in a single, elongated title string. Defendant's repeated replication of this format is not coincidental; it evidences intentional alignment with Plaintiff's proven merchandising style and consumer-facing copy.

| Plaintiff's Product Listings | Defendant's Product Listings |
|---|---|
| Crowned Skin King and Reign Cologned Body Butter Bundle \| Sandalwood, Leather, Fresh, and Nautical Scents \| INFUSED with Organic Shea & Mango Butters \| Moisturizing Formula with All-Day Fragrance. | KING SKIN Knockout Body Butter \| Infused with Fine, Fresh Fragrance with notes of Lime, Geranium, & Cedarwood \| Packed with Shea Butter & Avocado \| Long Lasting Deep Hydration for Men \| 6 oz |
| Crowned Skin King and Reign Cologned Body Oil Bundle \| Sandalwood, Leather, Fresh, and Nautical Scents \| INFUSED with Organic Shea & Mango Butters \| Moisturizing Formula with All-Day Fragrance. | KING SKIN CheckMate Body Butter \| Infused with Fine, Fresh Fragrance with notes of Bergamot, Vanilla, & Cedarwood \| Packed with Shea Butter & Avocado \| Long Lasting Deep Hydration for Men \| 6 oz |

| | |
|---|---|
| Crowned Skin King, Reign, and Monarch Cologned Body Oil Bundle \| Alluring, Nautical, & Spicy Scents \| INFUSED with Organic Shea & Mango Butters \| Moisturizing Formula with All-Day Fragrance. | KING SKIN Ice Body Butter \| Infused with Fine, Fresh Fragrance with notes of Tonka Beans & Sandalwood \| Packed with Shea Butter & Avocado \| Long Lasting Deep Hydration for Men \| 6 oz |
| King and Reign Cologned Body Butter Bundle \| Sandalwood, Leather, Fresh, and Nautical Scents \| INFUSED with Organic Shea & Mango Butters \| Moisturizing Formula with All-Day Fragrance. | KING SKIN Jungle King Body Butter \| Infused with Fine, Fresh Fragrance with notes of Amber, Sandalwood, & Bergamot \| Packed with Shea Butter & Avocado \| Long Lasting Deep Hydration for Men \| 6 oz |
| Crowned Skin King Cologned Body Butter \| Warm and Sensual Scent \| Blended with Sandalwood & Leather \| INFUSED with Organic Shea & Mango Butters \| Moisturizing Formula with All-Day Fragrance \| 4.4oz. | KING SKIN Peace of Mind Body Butter \| Infused with Fine, Fresh Fragrance with notes of Bergamot, Cedarwood, & Lavender \| Packed with Shea Butter & Avocado \| Long Lasting Deep Hydration for Men \| 6 oz |

58.    Defendant's copying extends beyond Amazon titling and into brand voice and tagline. Plaintiff has long used the distinctive, two-clause Slogan Mark "Made for Men. Tested by Women." in connection with its CROWNED SKIN products and brand channels, including prominently in Plaintiff's Instagram profile. Upon information and belief, subsequent to Plaintiff's adoption and use of the Slogan Mark, Defendant adopted a confusingly similar two-clause slogan "Formulated for men. Approved by women." that replicates Plaintiff's gendered call-and-response structure, cadence, and meaning while promoting competing men's body care goods (the "**Infringing Slogan**").

59.    The Infringing Slogan similarity is not limited to diction; it is a structural imitation designed to evoke the same source message: products expressly crafted for men and validated by women. Both slogans are deployed in identical channels of trade (social media) and address the same target consumers at the same decision point. Defendant's adoption therefore creates a likelihood of confusion as to sponsorship, affiliation, or approval.

60.    Defendant's copying conduct is especially probative when considered alongside its takedown campaign. While mimicking Plaintiff's merchandising style and slogan, Defendant

simultaneously filed Amazon Brand Registry complaints to remove Plaintiff's highest-selling SKUS – including listings that did not reference "King" – relying on non-public, cached thumbnails never seen by consumers. This juxtaposition of imitation with suppression evidences bad faith and an improper effort to obtain, via private platform process, the marketplace advantage Defendant could not earn on the merits of its own product, brand, or innovative qualities.

61. Plaintiff has suffered and will continue to suffer commercial harm from Defendant's copying of Plaintiff's branding and infringement of the Slogan Mark, including diversion of sales, erosion of brand distinctiveness, and loss of control over its messaging, in addition to the concrete revenue losses and algorithmic degradation caused by Defendant's takedowns.

### E. Plaintiff's Reasonable Apprehension of Suit by Defendant

62. On September 17, 2025, counsel for Defendant sent a cease and desist letter to Plaintiff demanding Plaintiff to immediately discontinue the use of the mark KING SKIN and the term "King." A copy of the September 17, 2025 letter is annexed hereto as Exhibit C. The letter made clear that Defendant would file suit against Plaintiff seeking damages and an injunction if Plaintiff refused to discontinue the use of the mark KING SKIN and the term "King" – specifically stating under the heading "Notice of Legal Action":

If your client does not comply by the stated deadline, our client will pursue all available remedies, including but not limited to:

- Filing a federal trademark infringement lawsuit seeking a preliminary and permanent injunction,

- A court-ordered removal of all infringing content,

- Disgorgement of your client's profits under 15 U.S.C. §1117,

- Treble damages for willful infringement, and

- Full recovery of attorneys' fees and litigation costs.

63. In a follow-up letter dated October 9, 2025, Defendant's counsel reiterated the threat of litigation under the heading "Notice of Intent to Litigate" and issued a demand for preservation of evidence. A copy of the October 9, 2025 letter is annexed hereto as Exhibit D.

**Claim for Relief**

**(Declaratory Judgment)**

64. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 63 above as though fully set forth herein.

65. Despite the registration of Defendant's KING SKIN mark, there is no likelihood that the relevant consumers of the parties' respective goods in the marketplace are likely to be confused as to the source or origin of the parties' respective goods because there is a fundamental difference between Plaintiff's non-trademark, descriptive usage of "King" and Defendant's trademark usage of KING SKIN.

66. The September 17, and October 9, 2025 letters sent by counsel for Defendant threatening that if Plaintiff did not capitulate to all of Defendant's demands, Defendant would file suit, creates a case of actual controversy within the jurisdiction of this Court as to the scope of the parties' rights.

67. As a result of the foregoing, Plaintiff is entitled to a declaratory judgment that its conduct as aforesaid, including its non-trademark, descriptive use of "King" as a scent designation, its long discontinued early us of KING SKIN infringes no rights that Defendant may have in its KING SKIN mark.

68. Plaintiff has no adequate remedy at law.

**(False Designation of Origin / Unfair Competition (15 U.S.C. § 1125(a)(1)(A))))**

69. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 63 above as though fully set forth herein.

70. Plaintiff owns protectable common-law rights in the distinctive slogan "Made for Men. Tested by Women." through continuous use in commerce no later than April 2025 in connection with the advertising and sale of Plaintiff's CROWNED SKIN men's grooming products. The Slogan Mark appears on Plaintiff's Instagram profile and functions as a source-identifying tagline associated by consumers with Plaintiff and its goods.

71. Defendant has adopted and used in commerce a confusingly similar slogan – "Formulated for men. Approved by women." – to promote competing men's body care products.

72. Plaintiff's Slogan Mark and Defendant's Infringing Slogan are confusingly similar in overall commercial impression: both employ a two-clause, call-and-response construction directed to the same audiences; both invoke identical gendered propositions ("for men" / "by women"); both convey the same message (products made for men, validated by women); both are deployed in the same channels of trade (social media); and both appear in proximity to men's body butters and oils.

73. Plaintiff's Slogan Mark is distinctive through prominent and continuous nation-wide use tied to Plaintiff's products, substantial sales, media recognition, and significant social-media following and engagement.

74. Defendant's use of its confusingly similar Infringing Slogan is likely to cause confusion, mistake, or deception as to the source, sponsorship, affiliation, or approval of Defendant's goods, including by leading consumers to believe that Defendant's products are associated with, endorsed by, or emanate from Plaintiff.

75. Defendant's adoption of its Infringing Slogan post-dates Plaintiff's use and, upon information and belief, was undertaken with knowledge of Plaintiff's Slogan Mark and with the intent to trade on Plaintiff's goodwill. The similarity in structure, cadence, and meaning, coupled with the parties' direct competition and channel overlap, supports an inference of willfulness.

76. Defendant's conduct constitutes false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

77. Plaintiff has suffered and will continue to suffer irreparable harm to its goodwill and brand distinctiveness, as well as commercial injury, including lost sales and loss of control over its messaging. Remedies at law are inadequate to compensate for these injuries.

**(Illinois Common-Law Trademark Infringement and Unfair Competition)**

78. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 63 above as though fully set forth herein.

79. Plaintiff owns protectable common-law rights in the distinctive slogan "Made for Men. Tested by Women."

80. Defendant has adopted and used in commerce a confusingly similar slogan – "Formulated for men. Approved by women." – to promote competing men's body care products

81. Plaintiff's Slogan Mark and Defendant's Infringing Slogan are confusingly similar in overall commercial impression.

82. Plaintiff's Slogan Mark is distinctive through prominent and continuous nation-wide use.

83. Defendant's use of its confusingly similar Infringing Slogan is likely to cause confusion, mistake, or deception as to the source, sponsorship, affiliation, or approval of Defendant's goods.

84. Defendant's adoption of its Infringing Slogan post-dates Plaintiff's use and, upon information and belief, was undertaken with knowledge of Plaintiff's Slogan Mark and with the intent to trade on Plaintiff's goodwill.

85. Plaintiff has suffered and will continue to suffer irreparable harm to its goodwill and brand distinctiveness, as well as commercial injury. Remedies at law are inadequate to compensate for these injuries.

**(Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/2, 510/3))**

86. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 63above as though fully set forth herein.

87. In the course of its business, Defendant has engaged in deceptive trade practices within the meaning of 815 ILCS 510/2(a), including but not limited to:

    a.   Creating a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods (§ 2(a)(2)) and as to affiliation, connection, or association with another (§ 2(a)(3)) by adopting and using the Infringing Slogan in connection with competing men's grooming products – a formulation confusingly similar in structure, cadence, and meaning to Plaintiff's source-identifying Slogan Mark deployed in the same channels of trade.

    b.   Disparaging Plaintiff's goods and business by false or misleading representations of fact (§ 2(a)(8)), including repeatedly telling Amazon – via Brand Registry complaints – that Plaintiff's CROWNED SKIN listings "infringe" Defendant's asserted rights even where the live Product Detail Pages plainly identified CROWNED SKIN as the brand and contained no consumer-facing "King Skin" content, and even where the targeted listings did not reference "King" at all.

25

c. Engaging in other conduct that creates a likelihood of confusion or misunderstanding (§ 2(a)(12)) by leveraging non-public, cached backend thumbnails (legacy catalog artifacts never shown to consumers) to procure takedowns of current CROWNED SKIN listings, thereby misleading the platform about the nature and presentation of Plaintiff's goods in the marketplace.

88. Under 815 ILCS 510/2(b), Plaintiff need not prove competition between the parties or actual confusion to obtain relief.

89. Plaintiff is likely to be damaged by Defendant's deceptive trade practices within the meaning of 815 ILCS 510/3, including through the continued suppression of Plaintiff's Amazon listings, erosion of goodwill and distinctiveness, lost sales, degradation of Best Sellers Rank, impaired advertising relevance metrics, and strain on Plaintiff's commercial relationship with Amazon and consumers in this District.

90. Defendant's conduct has been willful, undertaken with knowledge of Plaintiff's brand architecture and after notice of the rebrand and cleanup, and maintained despite the absence of any consumer-facing basis for the takedowns

**(Tortious Interference with Prospective Economic Advantage)**

91. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 63 above as though fully set forth herein.

92. Plaintiff maintains reasonable expectancies of continuing and future commercial relationships and transactions with (a) Amazon (including uninterrupted cataloging, advertising, and program eligibility for Plaintiff's ASINs); and (b) end-customers who purchase Plaintiff's CROWNED SKIN products through Amazon and other channels, including repeat purchasers and subscribers. These expectancies are concrete and ongoing, reflected in Plaintiff's average

~$500,000 per month in Amazon sales, established Best Sellers Rank, advertising history, and audience retargeting pools.

93. Defendant knew of Plaintiff's expectancies. Defendant targeted identified ASINs, referenced Plaintiff's Amazon listings in its September 17, 2025 letter, and filed Brand Registry complaints specifically aimed at suppressing Plaintiff's live product pages and disrupting sales to Amazon's customer base, including within this District.

94. Defendant intentionally and unjustifiably interfered with those expectancies by submitting and maintaining baseless Brand Registry complaints that (i) resulted in takedowns of Plaintiff's listings (including non-"King" ASINs), (ii) relied on non-public, cached backend thumbnails never shown to consumers, and (iii) persisted despite notice that Plaintiff had rebranded to CROWNED SKIN, never launched on Amazon under any legacy name, and used "King" only as variant descriptors under the CROWNED SKIN house mark.

95. Defendant's interference was directed at third parties – principally Amazon (as platform operator and counterparty for listing, cataloging, advertising, and program access) and end-customers (whose access to Plaintiff's products was interrupted). Defendant's conduct thereby impaired Plaintiff's relationship with Amazon (including account-health risk signals, throttled relisting, and restrictions tied to suppressed ASINs) and relationships with existing and prospective customers (including unfulfillable orders, lost continuity in reviews, and unavailability of hero SKUs).

96. Defendant lacked justification or privilege. In the crowded Class 3 marketplace, the scope of protection afforded the mark KING SKIN is narrow and Plaintiff's non-trademark descriptive use of the term "King" is a non-actionable, protected fair use; Plaintiff does not use KING SKIN, and Plaintiff's use of "King" is only in a non-trademark descriptive capacity under

a distinct house mark. Furthermore, some of Defendants takedown complaints were premised on obsolete, non-consumer-facing artifacts rather than the live Product Detail Pages. Defendant's refusal to retract after notice further evidences bad faith.

97. Defendant's conduct proximately caused Plaintiff's loss of expectancies and ongoing injury, including: daily lost sales ($\approx$ \$14,000/day while suppressed), degraded Best Sellers Rank, impaired search/advertising relevance signals, increased remediation spend, and erosion of Amazon's institutional trust in Plaintiff's account – injuries that compound over time and are impossible to calculate.

98. As a result, Plaintiff has suffered damages and will continue to suffer irreparable harm absent injunctive relief.

### (Tortious Interference with Contract)

99. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 63 above as though fully set forth herein.

100. Plaintiff and Amazon are parties to a valid and enforceable Seller Agreement governing the listing, cataloging, advertising, fulfillment, and sale of Plaintiff's CROWNED SKIN products in the Amazon Store.

101. On information and belief, Defendant knew of the Seller Agreement and of Plaintiff's contractual relationship with Amazon. Defendant's September 17, 2025 letter and subsequent Brand Registry complaints were expressly directed at Plaintiff's Amazon listings.

102. Defendant knowingly and intentionally submitted to Amazon false and/or misleading trademark complaints to procure suppression of Plaintiff's listings without any consumer-facing basis which interfered with Amazon's legitimate business relationships with its selling partners.

103.     Defendant's submissions caused Amazon to remove and continue suppressing specific listings and to refuse reinstatement notwithstanding Plaintiff's non-use of KING SKIN and non-trademark variant-only usage of "King" under the CROWNED SKIN house mark. Those actions interfered with the business relationship and expectancy between Amazon and third-party buyers using those product listings and made performance of the contract more expensive and burdensome.

104.     Defendant's intentional, unjustified inducement proximately caused Amazon's breach.

105.     As a result, Plaintiff has suffered damages and will continue to suffer irreparable harm absent injunctive relief.

<h3 style="text-align:center">Prayer for Relief</h3>

WHEREFORE, Plaintiff respectfully requests judgment against Defendant as follows:

A.  *Declaratory Relief (Non-Infringement).* A declaration that Plaintiff's use of "King" as a scent/variant designation for body butters and body oils under the CROWNED SKIN house mark does not infringe any rights Defendant claims in the mark KING SKIN (or in "King" standing alone), and that Defendant has no right to assert otherwise as to Plaintiff's current listings on Amazon or similar online marketplaces or elsewhere;

B.  *Injunction (Wrongful Amazon Complaints).* Preliminary and permanent injunctions enjoining Defendant (and its officers, agents, employees, affiliates, and those acting in concert with them) from submitting, maintaining, or re-submitting any complaint to Amazon (or any other marketplace) alleging trademark infringement by Plaintiff's CROWNED SKIN listings absent a good-faith, consumer-facing basis and prior leave of Court;

C.  *Mandatory Retractions/Restoration.* An order requiring Defendant to withdraw and retract all existing Amazon Brand Registry complaints against the identified ASINs; to provide Amazon with written notice (with case IDs) that Plaintiff's current CROWNED SKIN listings do not infringe Defendant's rights; and to cooperate in good faith with Amazon to restore the affected listings without delay;

D.  *Injunction (Slogan Infringement).* Preliminary and permanent injunctions enjoining Defendant from using the Infringing Slogan "Formulated for men. Approved by women." or any slogan confusingly similar to Plaintiff's Slogan Mark "Made for Men. Tested by Women." in connection with the advertising, promotion, or sale of men's grooming products, and requiring removal of such use from all mediums and materials;

E.  *Corrective Measures.* An order requiring Defendant to publish corrective advertisements in an amount and having a circulation to be determined at trial stating in sum and substance that Plaintiff's non-trademark use of "King" as a scent variant does not infringe Defendant's KING SKIN trademark and to issue corrective communications to Amazon and any other marketplace or platform to which Defendant submitted infringement complaints concerning Plaintiff, and to certify completion of such corrections to the Court and Plaintiff;

F.  *Damages (Lanham Act and State Law).* An award of compensatory damages in an amount to be proven at trial for losses caused by Defendant's conduct, including lost profits, consequential damages, and costs of remediation/reinstatement;

G.  *Disgorgement/Profits (Lanham Act).* An order requiring Defendant to account for and disgorge all profits attributable to its false designation of origin/unfair competition (15 U.S.C. § 1117(a));

H. *Punitive Damages (State Torts).* An award of punitive damages for Defendant's willful and malicious tortious interference and related state-law misconduct;

I. *Attorneys' Fees and Costs.* An award of Plaintiff's reasonable attorneys' fees and costs as permitted by law;

J. *Further Relief.* Such other and further legal or equitable relief, including "further necessary or proper relief" as the Court deems just and proper to fully remedy Defendant's conduct and prevent recurrence.

Dated: New York, New York  
October 20, 2025

FOLEY & LARDNER LLP

By: */s/ R. Spencer Montei*  
R. Spencer Montei, Esq.  
FOLEY & LARDNER LLP  
321 North Clark Street, Suite 3000  
Chicago, Illinois 60654-4762  
Telephone: (312) 832-4500  
Facsimile: (312) 832-4700  
E-mail: rmontei@foley.com

Robert S. Weisbein, Esq. (*pro hac vice* forthcoming)  
New York State Bar No. 1844588  
Sam M. Koch, Esq. (*pro hac vice* forthcoming)  
New York State Bar No. 5150677  
FOLEY & LARDNER LLP  
90 Park Avenue  
New York, New York 10016-1314  
Telephone: (212) 682-7474  
Facsimile: (212) 687-2329  
E-mail: <rweisbein@foley.com>

*Attorneys for Crowned Skin Group, LLC*